## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

MOHAMED SALEM EL-HADAD,     )
       )
       Plaintiff,    )
       )
vs.        )
       )
       )
EMBASSY OF THE        )
UNITED ARAB EMIRATES, et al.,    )
       )
       Defendants.    )

Case No:1:96CV01943 (RWR)

Judge: Richard W. Roberts

Notice of the Court 09/04/01 Provides
That All Discovery Disputes be Referred
to MJ Deborah A. Robinson

### DEFENDANTS' MOTION TO DISMISS OR IN
### THE ALTERNATIVE TO EXCLUDE OR STRIKE
### PLAINTIFF MOHAMED SALEM EL-HADAD'S TESTIMONY

Defendants, the Embassy of the United Arab Emirates (the "Embassy") and the Government of the United Arab Emirates (the "UAE") ("Defendants"), by counsel, pursuant to Fed. R. Civ. P. 41(b) and/or 43(a), respectfully submit this Motion to Dismiss or, in the Alternative, to Exclude or Strike Plaintiff Mohamed Salem El-Hadad's Testimony for Failure to Comply with Rule 43(a). In support of their Motion, Defendants respectfully refer the Court to the accompanying Memorandum of Points and Authorities. A proposed order is attached.

January 23, 2004        Respectfully submitted,

Haig V. Kalbian (D.C. Bar #400976)
Mary M. Baker (D.C. Bar #443104)
KALBIAN HAGERTY L.L.P.
2001 L Street, N.W.
Suite 600
Washington, D.C. 20036
*Counsel for Defendants*

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

MOHAMED SALEM EL-HADAD,    )
                      )
           Plaintiff,    )
                      )
vs.                       )     Case No:1:96CV01943 (RWR)
                      )
                      )     Judge: Richard W. Roberts
EMBASSY OF THE          )
UNITED ARAB EMIRATES, et al.,  )
                      )
           Defendants.  )

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO EXCLUDE OR STRIKE PLAINTIFF MOHAMED SALEM EL-HADAD'S TESTIMONY

Defendants, the Embassy of the United Arab Emirates (the "Embassy") and the Government of the United Arab Emirates (collectively the "UAE" or "Defendants"), by counsel and pursuant to Fed.R.Civ.P. 41(b) and/or 43(a), respectfully submit this memorandum in support of Defendants' Motion to Dismiss, or in the Alternative, Motion to Exclude or Strike Plaintiff's Testimony for Failure to Comply with Rule 43(a) of the Federal Rules of Civil Procedure and state as follows:

## INTRODUCTION

Plaintiff Mohamed Salem El-Hadad ("El Hadad") is an Eyptian citizen, residing in Cairo, Egypt. This motion is necessitated by Plaintiff's recently announced intention to appear via "live feed" on March 8, 2004 so as to give "testimony" at trial of this matter. Since August 1, 2003, Defendants' counsel has sought to determine whether Plaintiff would appear at trial.[1] See Letter

---

[1] Trial had been scheduled for October 6, 2003 and then moved to October 20, 2003 due to a court conflict. Mr. El Hadad's counsel ignored the August 1st written request by the undersigned to determine whether Mr. El Hadad had obtained a visa or what his plans were with respect to trial. Instead, Plaintiff filed a motion for continuance until March 2004, which was granted.

from Haig V. Kalbian, Esq. to Sylvia J. Rolinksi, Esq., dated 08/01/03, attached hereto as **Exhibit A**. Defendants, however, were met with nothing but silence from Plaintiff's counsel on that issue. Accordingly, Defendants sent another letter on January 9, 2004, again seeking whether El Hadad would appear at trial or what his plans were.

Plaintiff's counsel then asked that Defendants consent to Plaintiff providing testimony via live satellite or video link. Defendants, however, cannot consent to this means of testimony for a multitude of reasons: (i) The sworn oath that would be administered to Plaintiff, located in Egypt, would be rendered utterly meaningless by the lack of judicial recourse available to this Court should Plaintiff commit perjury; (ii) Defendants rights would be severely prejudiced should Plaintiff fail to appear in person at trial (i.e., without in person confrontation and cross-examination), as well as the disruptions of television coupled with an interpreter; (iii) Plaintiff has not complied with requirements of Fed. R. Civ. P. 43(a); and also (iv) Plaintiff, throughout this case, has failed to cooperate with Defendants regarding his visa status and appearance in the case.

## STATEMENT OF THE CASE

This case involves breach of alleged contract and defamation allegations brought by a former, disgruntled employee of Defendants, the Embassy and the Government of the UAE. In about February 1996, Defendants terminated Plaintiff's employment from the Embassy in Washington, DC, for cause.[2] El Hadad had worked for the UAE government in Abu Dhabi for 12 years preceding that.

---

[2] At all times, Defendants' position has been that Plaintiff was terminated when an audit revealed that he had been involved in certain financial improprieties.

2

After being fired, Plaintiff El-Hadad filed this lawsuit and then left the United States to return to his home country of Egypt.  Since 1996, El-Hadad has apparently attempted, without success, to obtain an entry visa to the United States purportedly to pursue this action.

For over a year, from approximately 10/1/01 and 9/06/02, Defendants attempted without success to take Plaintiff's deposition.  Ultimately, Defendants were forced to seek judicial intervention to secure Plaintiff's deposition, because defense counsel had received little cooperation or information from Plaintiff's counsel regarding the status of Plaintiff's visa application and no cooperation in seeking another venue in Western Europe. Moreover, Plaintiff refused to share in the reasonable costs of his deposition.

Accordingly, Defendants filed a motion to dismiss, and this Court ordered El Hadad to make himself available for deposition prior to November 29, 2002 or face dismissal of his case and to cooperate with Defendants in setting that deposition.  See Order dated September 6, 2002. In the face of Plaintiff's insistence that Defendants bear the entire cost for taking El Hadad's deposition (via Internet or overseas), the Court further specifically directed that Plaintiff would share in the expenses of taking his deposition, whether by Internet or otherwise.  Id.

During 2003, Plaintiff's counsel provided no information to the undersigned as to the progress of Plaintiff's visa application.  Not having heard anything and with an original trial date scheduled for October 6, 2003 (the Court later moved the date to October 20), the undersigned counsel sent a letter to Plaintiff's counsel on August 1, 2003, requesting an update regarding Plaintiff's visa application.  See **Exh.** A, Letter from Haig V. Kalbian, Esq. to Sylvia J. Rolinksi, Esq., dated 08/01/03.

In keeping with Plaintiff's pattern of non-cooperation, Plaintiff and his counsel failed to provide any written response to Mr. Kalbians' request as to Mr. El Hadad's visa status and also

failed to give any information about their plans as to Mr. El Hadad.   Instead, Sylvia Rolinski, Esq., who is lead counsel for Plaintiff, eventually left a voicemail for Mr. Kalbian. In that message, she said she was recuperating from eye surgery and that Plaintiff would be filing a Motion for Continuance, because she would be unavailable to travel from Florida—where she was recuperating—for the trial on October 20th. Based on those representations, the Court continued the trial date to March 8, 2004.[3]

On January 9, 2004, defense counsel again wrote to Plaintiff's counsel requesting an update as to Plaintiff's visa status to determine whether Plaintiff will appear for trial. See Letter from H. Kalbian to S. Rolinski, dated 01/09/04, attached hereto as **Exhibit B**.

In response, Plaintiff's counsel confirmed via a telephone conversation with Mary Baker, Esq., and then by letter that Plaintiff would not be appearing in person at trial and requested that Defendants consent to a motion to allow Plaintiff to testify via live video conference. See Letter from H. Kalbian to S. Rolinski, dated 01/09/04, attached hereto as **Exhibit C;** see Letter from S. Rolinski to M. Baker, dated 01/12/04, attached hereto as **Exhibit D**.

Defense counsel and Defendants could not accede to the request because of the severe and irreparable harm that would inure to Defendants by waiving the in person testimony requirement set forth in the Federal Rules.   See discussion in Sections A, B and C below.  As demonstrated herein, Plaintiff cannot be permitted to testify via live feed from Egypt, because

---

[3]     In Plaintiff's moving papers seeking continuance, which were filed with the Court on August 22, 2003, Plaintiff's counsel specifically represented to this Court that a continuance of the October 20th trial was necessitated because, lead counsel, Sylvia J. Rolinksi, Esq., could not travel to D.C. from Florida and that it would take a minimum of eight weeks for her recovery. However, Ms. Rolinski appeared in person on September 26, 2003 on Friday motions' day in the Eastern District of Virginia and argued a motion to dismiss before the Honorable James Cacheris, which she had signed and filed on August 1, 2003.

4

there are no safeguards that can protect the truth-telling process and the most basic, fundamental rights afforded by our constitution and justice system to litigants in every case.

## ARGUMENT

### THIS COURT SHOULD NOT PERMIT EL-HADAD TO TESTIFY FROM EGYPT BECAUSE HIS TESTIMONY WOULD VIOALTE THE FEDERAL RULES AND WOULD NOT SAFEGUARD THE DEFENDANTS' RIGHTS

#### A. Live Satellite Testimony Violates The Federal Rules of Civil Procedure Requirement That Plaintiff El-Hadad Testify in Open Court.

Rule 43(a) of the Federal Rules of Civil Procedure provides, in pertinent part: "In every trial, the testimony of witnesses shall be taken in open court." Fed. R. Civ. P. 43(a). Although Rule 43(a) also permits "presentation of testimony in open court by contemporaneous transmission from a different location," it does so *only* "for good cause shown and in compelling circumstances and upon appropriate safeguards." Id.   In fact, courts have concluded the "open court" requirement necessitates the presence of the witness in the courtroom.  See Murphy v. Tivoli Enterprises, 953 F.2d 354, 359 (8th Cir. 1992) (holding that trial court erred by permitting rebuttal witness to testify at trial via telephone, although error was harmless because witness testified solely regarding strict liability claims and jury decision based only on negligence claims);  see also Rusu v. INS, 296 F. 3d 316, 318 (4th Cir. 2002) (cautioning against the use where credibility determinations are involved).

The Eighth Circuit has interpreted Rule 43(a) such that: (1) Rule 43(a) presupposes that a witness will be physically present in the courtroom to give testimony orally; (2) the federal rules strongly favor the testimony of live witnesses so that the jury may observe the demeanor of the witness to determine the witness's veracity; and (3) the importance of a party's right to cross examine and impeach a witness in the presence of the jury requires the courts to interpret exceptions to Rule 43(a) narrowly. See Murphy, 953 F.2d at 359.

**B.      Televised Testimony Will Be Meaningless in this Case for Physical Reasons.**

Relevant case law demonstrates that televised testimony by El Hadad from Egypt will be meaningless. The Fourth Circuit has cautioned against the use of video transmissions where credibility assessments are involved. Rusu, 296 F. 3d 316, 318 (4th Cir. 2002).

In this case, it will be next to impossible to make assesement of El Hadad's credibility via television. El Hadad has insisted on the use of an interpreter, which is extremely disruptive of the process without the proceeding being televised. During his own deposition, El Hadad constantly interrupted the interpreter and at times corrected the interpreter's English in his deposition. See El Hadad Depo. Tr. at 165-166; 210 (El Hadad's counsel is reminding him that he is talking in two languages), lines 20-21 (Excerpts attached hereto as **Exhibit E**). His own lawyers had to remind him to let the interpreter to translate before giving his response. Exh. E, Tr. at 195.

In Rusu v. INS, an asylum seeker—testifying from detention in Farmville, Virginia—appealed the denial of his petition arguing that the video conferenced asylum hearing violated his due process and statutory rights. Rusu, 296 F. 3d 316, 318-319 (4th Cir. 2002). In criticizing the use of live video conferencing, the 4th Circuit observed that during the proceeding the petitioner became confused when the person addressing him was not the one on the camera, and on several occasions he directed his response to the wrong person. Id. Moreover, the court also noted there were a number of technical problems with the video equipment and the immigration judge was compelled at one point to suspend the hearing to check the quality of the equipment. Id.

Quoting Chief Judge Wilkinson in an earlier Fourth Circuit case, the Ruse court reaffirmed that, "virtual reality is rarely a substitute for actual presence and . . . even in an age of advancing technology, watching an event on the screen remains less than the complete

equivalent of actually attending it." Rusu, 296 F.3d at 322 (quoting, United States v. Lawrence,

248 F.3d 300, 304 (4th Cir. 2001)).  The court concluded, "[V]ideo conferencing may render it

difficult for a factfinder in adjudicative proceedings to make credibility determinations and to

gauge demeanor." Id.

Finally, the court emphasized that, "[V]ideo conferencing is not the same as actual

presence, and it is to be expected that the ability to observe demeanor, central to the factfinding

process, may be lessened in a particular case by video conferencing.  Id. (citing, Edwards v.

Logan, 38 F. Supp. 2d 463, 467 (W.D. Va. 1999)).[4]

Two other sources underscore the widespread belief that contemporaneous video

transmission should not be equated with live physical presence.  The Supreme Court of North

Dakota, in reference to video testimony, has commented:

> The focus of the camera may not correspond to the focus of the
> trier of fact, who must rely upon the demeanor of the witness in
> judging the witness's credibility.  Neither does the camera show
> who is present or who may be aiding the witness.  We recognize
> that testimony by closed circuit television, even though the image
> of the witness is seen, has its shortcomings.

In re Gust, 345 N.W.2d 42, 45 (N.D. 1984).  Similarly, the Advisory Committee notes to the

Rule 43(a) amendments caution:

> The importance of presenting live testimony in court cannot be
> forgotten.  The very ceremony of trial and the presence of the
> factfinder may exert a powerful force for truthtelling.  The
> opportunity to judge the demeanor of a witness face-to-face is
> accorded great value in our tradition.  Transmission cannot be
> justified merely by showing that it is inconvenient for the witness
> to attend trial.

Advisory Committee's Notes to Fed. R. Civ. P. 43(a).

---

[4] The Edwards court further established that video conferencing was not an "acceptable alternative" to
physical presence in every case.  See Edwards, 38 F. Supp. 2d at 467.  The court permitted the video
testimony, however, in part, because the witness was already in custody in prison and was not scheduled
for release for several years.  Id. at 464.

Despite the breadth of case law and committee reports in support of live testimony and physical presence of witnesses, it should be noted that at least one Magistrate Judge in this jurisdiction has allowed a non-party witness to testify from outside of the courtroom using live video transmission.  In FTC v. Swedish Match North America, Inc., Magistrate Judge Facciola permitted the live video testimony of a non-party witness over objections from the defendants. 197 F.R.D. 1 (D.D.C. 2000).  However, Judge Facciola cited only Ninth Circuit case law, including a case that the Ninth Circuit affirmed without any discussion.[5]  Moreover, his ruling did not include any discussion of the Fourth Circuit or Eighth Circuit cases cited and discussed above, nor did he mention any of the notes from the advisory committee that follow and shed light on Rule 43(a).

Additionally, the witness in Swedish, was a citizen of the United States and he testified from the State of Oklahoma.  He was therefore subject to the laws of the United States, was within the jurisdiction of the United States, and could have been prosecuted for perjury.

In contrast, the witness here who is asking to testify via live feed is arguably the most important witness.  Morever, the plaintiff in this case is not a U.S. citizen, he will not be testifying in the United States, he will not be within the jurisdiction of the United States, and El-Hadad will not be subject to prosecution for perjury.  For the above reasons, Swedish bears no application to the case at bar.

### C. No Safeguards Exist to Protect Defendants from Plaintiff's Testimony, Because the United States and Egypt Do Not Have Bilateral Extradition Treaty for Perjury.

Defendants cannot get a fair trial with the most important witness testifying via live satellite feed, because El-Hadad may perjure himself without consequence if he is permitted to

---

[5] The Ninth Circuit affirmed an Oregon court's decision without discussion in Official Airlines Guides, Inc. v. Goss, 6 F.3d 1385.

testify from Egypt. The last extradition treaty between the United States and Egypt was signed in 1874 in Constantinople. It does not provide for extradition for perjury. EXTRADITION, Aug. 11, 1874, U.S.-Ottoman Empire, 1874 U.S.T. LEXIS 17; That treaty provides that persons shall be "delivered up" when they have been convicted or charged with any of the following crimes:

> 1. Murder, comprehending the crimes designated by the terms of parricide, assassination, poisoning, and infanticide.
> 2. The attempt to commit murder.
> 3. The crimes of rape, arson, piracy, and mutiny on board a ship, whenever the crew, or part thereof, by fraud or violence against the commander, have taken possession of the vessel.
> 4. The crime of burglary, defined to be the action of breaking and entering by night into the house of another with the intent to commit felony; and the crime of robbery, defined to be the action of feloniously and forcibly taking from the person of another goods or money by violence, or putting him in fear.
> 5. The crime of forgery, by which is understood the utterance of forged papers, the counterfeiting of public, sovereign, or government acts.
> 6. The fabrication or circulation of counterfeit money, either coin or paper, of public bonds, banknotes, and obligations, and in general of all things being titles and instruments of credit, the counterfeiting of seals, dies, stamps, and marks of state and public administrations, and the utterance thereof.
> 7. The embezzlement of public moneys, committed within the jurisdiction of either party, by public officers or depositors.
> 8. Embezzlement, by any person or persons, hired or salaried, to the detriment of their employers, when these crimes are subject to infamous punishment.

Id. Significantly, perjury is not included among the crimes for which extradition between the United States and Egypt would be possible.

Pertinent case law demonstrates that a witness can only testify via live video feed if the laws against perjury can be enforced. Harrell v. Florida, 709 So.2d 1364 (Fla. 1998). The Florida Supreme Court has addressed this precise issue of perjury and live video testimony and it found that the threat of prosecution for perjury is a mandatory safeguard that protects parties' rights.

In <u>Harrell v. Florida</u>, the Florida Supreme Court considered a defendant's appeal from a conviction for robbery and burglary. 709 So.2d 1364 (Fla. 1998). The lower court had allowed the victims to testify via live video from Argentina. <u>Harrell</u>, 709 So.2d at 1367. The two victims were citizens of Argentina and one of the victims was in poor health. <u>Id.</u> On appeal, the State urged the Florida Supreme Court to conclude that the satellite procedure used to secure testimony from Argentina was the equivalent of "physical, face-to-face confrontation." <u>Id.</u> at 1368.

The Florida Supreme Court rejected that contention, reasoning that witness testimony necessarily involves sworn oaths, and it further found that "an oath is only effective if the witness can be subjected to prosecution for perjury upon making a knowingly false statement." <u>Id.</u> at 1371 (citing <u>Maryland v. Craig</u>, 497 U.S. 836, 845-46 (1990)):

> To ensure that the possibility of perjury is not an empty threat for those witnesses that testify via satellite from outside the United States, it must be established that there exists an extradition treaty between the witness's country and the United States, and that such a treaty permits extradition for the crime of perjury.

<u>Id.</u> In <u>Harrell</u>, the State proved that there was an extradition treaty between the United States and Argentina and that it included extradition for the crime of perjury so that there were safeguards.

Plaintiff El-Hadad cannot meet that burden of proof in this case, because the United States and Egypt do not have an extradition treaty that includes the crime of perjury. This Court should therefore exclude or strike any testimony from Egypt, because the Federal Rules require the testimony in open court and no safeguards are available to protect the Defendants from knowingly false and perjured statements.

WHEREFORE, Defendants, the Government of the United Arab Emirates and the Embassy of the United Arab Emirates, respectfully request that this Court enter an order

dismissing the case for failure to prosecute OR, in the alternative, excluding or striking plaintiff Mohamed Salem El-Hadad's testimony via video conference or other satellite means broadcasting from Egypt at trial in this matter and for such other and further relief as the Court deems just and appropriate.

Dated: January **23**, 2004

Respectfully submitted,

KALBIAN HAGERTY L.L.P.

By: _____

Haig V. Kalbian (D.C. Bar # 400974)
Mary M. Baker (D.C. Bar # 443104)
2001 L Street, NW, Suite 600
Washington, D.C.  20036
T: (202) 223-5600
F:  (202) 223-6625
*Counsel for Defendants UAE*
*and the Embassy of the UAE*

## ORAL ARGUMENT IS HEREBY REQUESTED

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of January 2004, a true and complete copy of the foregoing Motion to Dismiss or, in the Alternative, Motion to Exclude or Strike the accompanying Memorandum of Points and Authorities in Support Thereof and proposed order, was served via overnight mail, on the following:

Sylvia J. Rolinski, Esq.
ROLINSKI, TERENZIO & SUAREZ, LLP
14915 River Road
Potomac, MD 20854
(240) 632 0903
Counsel for Plaintiff

Haig V. Kalbian