UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMED SALEM EL-HADAD )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE EMBASSY OF THE UNITED )<br>ARAB EMIRATES, *ET AL.*, )<br>)<br>Defendants. ) | Case No. 1:96CV01943<br><br>Judge: Richard W. Roberts |

**DEFENDANTS' AMENDED PROPOSED
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Defendants, the Embassy of the United Arab Emirates (the "Embassy") and the Government of the United Arab Emirates (the "UAE" or "Government") (collectively "Defendants"), by counsel, pursuant to this Court's Order dated 08/30/01 and LCvR 16.5, respectfully submit their Proposed Findings of Fact and Conclusions of Law in the above-styled case as follows:

**I.   FINDINGS OF FACT.**

1. Plaintiff Mohamed Salem El-Hadad ("El-Hadad" or "Plaintiff") is a citizen of Egypt. He received a bachelor of commerce degree in accounting in Alexandria, Egypt in 1976. After his graduation he served in the Egyptian military for approximately five years.

2. El-Hadad worked as an auditor for the UAE from 1982 until his termination in 1996.

3. From 1982 until 1992, El-Hadad worked in Abu Dhabi, United Arab Emirates.

4. In December 1992, El-Hadad resigned from his position in Abu Dhabi after receiving an offer of a new position within the UAE Government in Washington, DC.

5. El-Hadad was appointed to his new position at the Cultural Division of the Embassy in Washington, DC by an Administrative Decree of the UAE Government, dated December 31, 1992, effective January 1, 1993.

6. El-Hadad did not have a written employment contract with the Embassy of the UAE Government. El-Hadad was an at-will employee of the Embassy in Washington, DC.

7. It would be unreasonable for El-Hadad to conclude that he had an employment contract with a foreign government or its embassy based on UAE federal laws and regulations.

8. El-Hadad was dismissed from his position at the Embassy in Washington, DC, for cause, in February 1996.

9. After his dismissal from the Embassy, El-Hadad admits that he himself published the stated reasons for his termination from the Embassy to third parties, including prospective employers.

10. Plaintiff has failed to show that anyone acting on the Embassy's behalf and with authority made defamatory statements to any third party regarding El-Hadad.

11. During at least 1996 and 1997, El-Hadad failed to make good faith efforts to find new employment as a bookkeeper, auditor or accountant.

12. In 1998, El-Hadad established his own profitable cosmetic business in Egypt.

## II. CONCLUSIONS OF LAW.

### A. BREACH OF CONTRACT.

#### (i) Plaintiff was an At-Will Employee of the Embassy

13. It is well-settled under District of Columbia law that in the absence of clearly expressed contrary intent, "the assumption will be that -- even though [the parties] speak in terms of 'permanent' employment -- the parties have in mind merely the ordinary business contract for

a continuing employment, terminable at the will of either party." Minihan v. American Pharmaceutical Asso., 812 F.2d 726, 728 (D.C. Cir. 1987) quoting Sullivan v. Heritage Foundation, 399 A.2d 856, 860 (D.C. 1979), quoting Littell v. Evening Star Newspaper Co., 120 F.2d 36, 37 (D.C. Cir. 1941).

14. Where employment is "at-will", an employee can be fired for any or no reason. Wemhoff v. Investors Management Corp., 528 A.2d 1205, 1208 n.3 (D.C. 1987).

15. It is also clear that parties may rebut the presumption of terminable-at-will employment only by "*stating clearly* their intention to do so." Littell, 120 F.2d at 37 (emphasis added). Under controlling D.C. law, Plaintiff must therefore present evidence (other than his own subjective belief) that he and the Embassy together agreed to lifetime employment. Minihan, 812 F.2d at 728; Sullivan, 399 A.2d at 860.

16. Plaintiff has not presented sufficient evidence to rebut the presumption that he was an at-will employee. Accordingly, Plaintiff's breach of contract claim must be denied, with prejudice, and judgment entered in Defendants' favor.

### (ii) Plaintiff Failed to Mitigate his Damages.

17. In a case for breach of employment contract, damages are generally measured by compensation that would have been due to the employee during the unexpired period of employment, reduced to present net worth. Hodges v. Evans Financial Corp., 823 F.2d 559, 569 (D.C. Cir. 1987) (citing District of Columbia v. Jones, 442 A.2d 512, 524 (D.C. 1982) (if the employee has obtained a substitute job or could have by use of reasonable efforts, "he is chargeable with the income he obtains or reasonably could obtain in this fashion"); Washington Welfare Asso. v. Poindexter, 479 A.2d 313 (D.C. 1984).

3

18.     Moreover, it is well settled that a party claiming breach of contract must act to mitigate his or her damages. Obelisk Corp. v. Riggs National Bank of Washington, 668 A.2d 847, 856 (D.C. 1995). The United States Supreme Court long ago stated:

> In cases of breach of contract for wages, if the servant is illegally discharged, he is bound to seek other employments, so as to lessen the damages, and his right to recover the stipulated wages is subject to the right to deduct the wages he could reasonably have earned during the time asked by the remainder of the contact.

United States v. Addison, 73 U.S. 291, 296 (1867).

19.     By Plaintiff's own admissions, the unrefuted evidence demonstrates that Plaintiff failed to mitigate his damages by seeking employment in his field of training and qualifications. Again, Plaintiff's breach of contract claim must be denied, with prejudice, and judgment entered in Defendants' favor.

**B.      DEFAMATION.**

**(i)     The Requisite Elements of Defamation Claim.**

20.     To establish a cause of action for defamation, a plaintiff must show that defamatory statements were "published," i.e., that they were "communicated to some person other than the one defamed." Tocker v. Greta Atlantic & Pacific Tea Co., 190 A.2d 822, 823 (D.C. 1963). At a minimum, Plaintiff cannot satisfy the publication element of his defamation claim.

21.     Notwithstanding Plaintiff's inability to demonstrate publication, truth is an absolute defense to a defamation action. Woodfield v. Providence Hosp., 779 A.2d 933, 938 (D.C. 2001). Plaintiff's claim fails because he has failed to prove by a preponderance of the evidence that any material falsehood was published to a third party regarding the Plaintiff.

**(ii)    Self-Publication.**

22.     By his own admissions, Plaintiff, and only Plaintiff published to third parties the facts and circumstances relating to his dismissal from the Embassy's employ. The District of Columbia does not recognize a cause of action based on compelled self-publication. <u>Atkins v.Industrial Telecommunications Association</u>, 660 A.2d 885, 892 (D.C. 1995). Plaintiff has failed to show by a preponderance of the evidence that the UAE caused him any damage.

**(iii)    Privileges.**

23.     Additionally, the District of Columbia recognizes the "common interest" privilege as an absolute defense to an action for defamation if the statement was made without malice or excessive publication. <u>Alade v. Borg-Warner Protective Services Corp.</u>, 28 F. Supp. 2d 655, 656 (D.D.C. 1998), <u>citing</u> <u>Moss v. Stockhard</u>, 580 A.2d 1011, 1024 (D.C. 1990).

24.     The plaintiff bears the burden of proof with regards to establishing malice or excessive publication. <u>Alade</u>, 28 F. Supp. 2d at 657. The defense encompasses a qualified privilege, recognized for a statement, otherwise defamatory, made by a person who shares the same common interest with the person to whom the statement is made. <u>Id.</u> at 656; <u>see</u> <u>Mosrie v. Trussell</u>, 467 A.2d 475, 477 (D.C. 1983) (deputy police chief's oral and written statements to police board regarding captain's possible criminal abuses were not slanderous or libel based on the common interest privilege and plaintiff failed to show malice).

25.     Accordingly, Plaintiff's defamation claim must be denied, with prejudice, and judgment entered in Defendants' favor.

**C.    ATTORNEYS' FEES.**

26.     In the absence of an express contractual or statutory provision to the contrary, Plaintiff is not entitled to an award of attorneys' fees. <u>See</u> <u>Schlank v. Williams</u>, 572 A.2d 101,

108 (D.C. 1990). Plaintiff has not and cannot identify any contractual or statutory provision that would entitle him, based on a favorable ruling, to recover attorneys' fees in this action.

Dated: May 27, 2005

Respectfully submitted,

KALBIAN HAGERTY L.L.P.

/S/ /Kal/

Haig V. Kalbian (D.C. Bar # 400974)
Mary M. Baker (D.C. Bar # 443104)
2001 L Street, NW, Suite 600
Washington, D.C. 20036
T: (202) 223-5600
F: (202) 223-6625

*Counsel for Defendants, the Government of the United Arab Emirates and the Embassy of the United Arab Emirates.*